**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**COVINGTON**

**CRIMINAL ACTION NO. 26-14-S-SCM-CJS**

**UNITED STATES OF AMERICA** **PLAINTIFF**

**V.** **<u>PLEA AGREEMENT</u>**

**LANDAN STRONG** **DEFENDANT**

* * * * *

1. Pursuant to Federal Rule of Criminal Procedure 11(c), the Defendant will enter a guilty plea to Count 1 of the Superseding Indictment, which charges a violation of 18 U.S.C. § 922(g)(3) (Unlawful User of/Addicted to Controlled Substances), as well as the Forfeiture Allegation. Pursuant to Rule 11(c)(1)(A), the United States will move dismiss Count 2, as well as the original Indictment, at sentencing.

2. The essential elements of Count 1 are:

(a) The Defendant knowingly possessed the firearms listed in the Indictment;

(b) At the time, he was an unlawful user of or addicted to a controlled substance;

(c) The Defendant knew that he was; and

(d) The possession of the firearms was in or affecting interstate or foreign commerce.

3. As to Count 1, the United States could prove the following facts that establish the essential elements of the offense beyond a reasonable doubt, and the Defendant admits these facts:

(a) On October 8, 2025, Boone County Sheriff's Office (BCSO) deputies were dispatched to Walton Verona High School (WVHS) after receiving numerous calls about a subject with a weapon on campus. According to witnesses, they observed a white male with long black hair and wearing black clothing conceal a firearm on school property (the individual was also captured on school surveillance cameras). Several schools were locked down as a result. The subject was eventually identified as the Defendant.

(b) Deputies found and detained the Defendant; he was advised of his rights and agreed to speak to deputies. The Defendant admitted that he was in possession of firearms, which he wrapped in his clothing and concealed in the woods near the high school; he then showed deputies where they were. Deputies recovered the following: (1) an American Tactical Mil-Sport multi-caliber pistol (S/N: MSA165365), with a .223 caliber round loaded in the chamber and a 30-round magazine containing 24 rounds of .223 ammunition; (2) a Glock 27, .40 caliber pistol (S/N: WYS481), with an aftermarket 9mm conversion slide and barrel, and an extended magazine containing approximately 20 rounds of 9mm ammunition; (3) an Armscor (Squires Bingham) 1911A1, .45 caliber pistol (S/N: RIA2875425) with an empty extended magazine; (4) a standard Glock 17 magazine containing approximately 17 rounds of 9mm ammunition; (5) 38 rounds of .22 long rifle ammunition; and (6) the clothes the Defendant had been wearing. The Defendant also had pressed fentanyl pills and a small amount of marijuana on his person.

(c) According to the Defendant, a friend messaged him on Snapchat about purchasing a 1911; he drove from his grandmother's residence in Sparta to the high school, where he parked. He then went to his friend's house, bought the gun for $150 (which he paid for via CashApp), and smoked marijuana.

(d) The Defendant admitted that he was addicted to fentanyl, that he used 10–20 pills a day so he didn't get "sick," and had been doing so for several years. He admitted that he had 40–50 pills on him that day because he buys "in bulk" from a source in Louisville, every 3–4 days, and pays $3 per pill. He also admitted that he had marijuana at his house. Deputies obtained and executed a search warrant at the Defendant's house in Burlington, where they found a Harrington & Richardson, .22 caliber pistol, S/N AC32387, nine rounds of .22

caliber ammunition, marijuana, a plastic bag with blue pills, 14 Alprazolam pills, and drug paraphernalia.

(e) All of the firearms were manufactured outside of Kentucky and therefore traveled in interstate and foreign commerce prior to being recovered.

4. The statutory punishment for Count 1 is not more than 15 years imprisonment, a $250,000 fine, and 3 years of supervised release. A mandatory special assessment of $100 applies, and the Defendant will pay this assessment to the U.S. District Court Clerk as directed by the Court.

5. Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend the following sentencing guidelines calculations, and they may object to or argue in favor of other calculations. This recommendation does not bind the Court.

(a) United States Sentencing Guidelines (U.S.S.G.), November 1, 2025, manual, will determine the Defendant's guidelines range.

(b) Pursuant to U.S.S.G. § 1B1.3, the Defendant's relevant conduct includes the facts outlined in paragraph 3.

(c) Pursuant to U.S.S.G. § 2K2.1(a)(4), the base offense level is 20 because the offense involved a semiautomatic firearm that is capable of accepting a large capacity magazine and the Defendant was a prohibited person at the time of the instant offense.

(d) Pursuant to U.S.S.G. § 2K2.1(b)(1)(A), increase the offense level by 2 levels because the offense involved 3–7 firearms.

(e) Pursuant to U.S.S.G. § 2K2.1(b)(7)(B), increase the offense level by 4 levels because the Defendant used or possessed any firearm in connection with another felony offense.

(f) Pursuant to U.S.S.G. § 3E1.1 and unless the Defendant commits another crime, obstructs justice, or violates a court order, decrease the offense level by 2 levels for the Defendant's acceptance of responsibility. If the offense level determined prior to this 2-level decrease is level 16 or greater, the United

States will move at sentencing to decrease the offense level by 1 additional level based on the Defendant's timely notice of intent to plead guilty.

6. No agreement exists about the Defendant's criminal history category pursuant to U.S.S.G. Chapter 4.

7. The Defendant waives the right to appeal the guilty plea, conviction, and any sentence that is within or below the advisory Guideline range as finally determined by the Court. Except for claims of ineffective assistance of counsel, the Defendant also waives the right to attack collaterally the guilty plea, conviction, and sentence.

8. The Defendant consents to the forfeiture to the United States, by administrative or judicial proceedings, of all right, title, and interest in the property listed in the forfeiture allegation of the Indictment. The Defendant agrees that this property is subject to forfeiture because a nexus exists between the property and the offense(s) to which he/she is pleading guilty, as set forth in the forfeiture allegation of the Indictment. The Defendant consents to the entry of a Preliminary Order of Forfeiture, pursuant to Federal Rule of Criminal Procedure 32.2, and agrees take any steps necessary to assist the government in effectuating the surrender and forfeiture of the assets identified herein, including but not limited to executing any documents necessary for the surrender and transfer of title to the United States. The Defendant agrees not to file a claim or petition seeking remission or otherwise contesting the forfeiture of the assets identified herein in any administrative or judicial proceeding, or to assist any other person or entity with doing so, and agrees to withdraw, and hereby withdraws, any such claim or petition that he/she already has submitted. The Defendant voluntarily and knowingly waives all

provisions in Rule 32.2 pertaining to notice and/or the timing of forfeiture orders. The Defendant also waives his right, if any, to a jury trial on forfeiture and all constitutional, legal, or equitable defenses to the forfeiture. The Defendant agrees that this forfeiture is separate and distinct from any restitution, fine, or penalty ordered by the Court and shall survive bankruptcy.

9. The Defendant abandons any interest in, and consents to the official use, destruction, or other disposition of, any item obtained by any law enforcement agency during the investigation, unless an item is specifically provided for in another provision of this Agreement. The Defendant also waives any notice of a proceeding to implement the official use, destruction, or other disposition of any item abandoned under this paragraph.

10. The Defendant agrees to cooperate fully with the United States Attorney's Office by making a full and complete financial disclosure. Within 30 days of pleading guilty, the Defendant agrees to complete, sign, and return to the United States Attorney's Office a financial disclosure statement or affidavit disclosing all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party, and disclosing any transfer of assets that has taken place within three years preceding the entry of this plea agreement. Upon request, the Defendant agrees to provide the United States Attorney's Office with records verifying his/her financial information or with any releases required to obtain such records, with such releases being valid for a period

extending 90 days from the date of sentencing. The Defendant will submit to an examination, which may be taken under oath and may include a polygraph examination. Prior to sentencing, the Defendant agrees to notify the United States Attorney's Office and obtain its consent before transferring, encumbering, or disposing of any interest in property with a value exceeding $1,000.00 owned or controlled directly or indirectly, individually or jointly, by the Defendant, including any interest held or owned under any name, including trusts, partnerships, and corporations. If the Defendant is ever incarcerated in connection with this case, the Defendant will participate in the Bureau of Prisons Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments. The Defendant agrees to notify the United States Attorney's Office of any material changes in his/her economic circumstances, as described in 18 U.S.C. § 3664(k), which occur prior to sentencing, within seven days of the event giving rise to the changed circumstances. If the Defendant fails to comply with any of the provisions of this paragraph, the United States, in its discretion, may refrain from moving the Court pursuant to U.S.S.G. § 3E1.1(b) to reduce the offense level by one additional level, and may argue that the Defendant should not receive a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).

11. The Defendant understands and agrees that pursuant to 18 U.S.C. § 3613, whatever monetary penalties are imposed by the Court will be due and payable immediately and subject to immediate enforcement by the United States. If the Court

imposes a schedule of payments, the Defendant agrees that it is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. The Defendant waives any requirement for demand of payment on any fine, restitution, or assessment imposed by the Court and agrees that any unpaid obligations will be submitted to the United States Treasury for offset. The Defendant waives any defense or objection to any action to enforce the collection of financial obligations to be imposed in connection with this prosecution, including, but not limited to, collection procedures authorized by the Federal Debt Collection Procedures Act, 28 U.S.C. § 3001, et seq., 18 U.S.C. § 3664, or 18 U.S.C. § 3613. The Defendant expressly authorizes the United States to obtain the Defendant's credit reports at any time. The Defendant authorizes the U.S. District Court to release funds posted as security for the Defendant's appearance bond in this case, if any, to be applied to satisfy the Defendant's financial obligations contained in the judgment of the Court. The Defendant authorizes the United States Attorney's Office to inspect and copy all financial documents and information held by the U.S. Probation Office.

12. If the Defendant violates any part of this Agreement, the United States may void this Agreement and seek an indictment for any violations of federal laws, and the Defendant waives any right to challenge the initiation of additional federal charges.

13. This document contains the complete and only Plea Agreement between the United States Attorney for the Eastern District of Kentucky and the Defendant. The United States has not made any other promises to the Defendant.

14. This Agreement does not bind the United States Attorney's Offices in other districts, or any other federal, state, or local prosecuting authorities.

15. The Defendant and the Defendant's attorney acknowledge that the Defendant understands this Agreement, that the Defendant's attorney has fully explained this Agreement to the Defendant, and that the Defendant's entry into this Agreement is voluntary.

JASON D. PARMAN
FIRST ASSISTANT UNITED STATES ATTORNEY

Date: 6/9/26 By: [signature]
Elaine K. Leonhard
Assistant United States Attorney

Date: 6/8/26 [signature: Landan Strong]
Landan Strong
Defendant

Date: 6/3/26 [signature]
Marvin A. Knorr, III
Attorney for Defendant